Try again. Our third case for this morning is Lowinger v. Oberhelman. Mr. Abraham, and Judge Rovner, can you hear? Right before you start, can you hear me, Judge Rovner? This screen just went dark. Yes, mine has like little itty bitty things on it. Okay, now what? Now I can hear you. Can you hear me, Judge Rovner? It just went little again. Sorry. Hello, can you hear me? I can hear you, yes. Can you hear me? Oh, yes. Oh, you sound so good. Mr. Abraham, why don't you say a word so that we can be sure she can hear you too? Good morning, Judge. Oh, those are the most beautiful words of the day. I thought the appellant's handbook said no humor. Under extreme circumstances, we'll make an exception. Thank you. All right, I think since we can hear you and... I can see a very tiny screen. That's what I can see too, but let's proceed that way. Sure. May it please the Court, Your Honors. Jeffrey Abraham, appearing for plaintiff's appellants Robert Loewinger and Isaac Fuchs. This case involves an appeal from the dismissal of a shareholder of derivative action by Judge Darrow of the Central District of Illinois. And speaking in broad terms, the plaintiffs first made a demand on the Board of Directors to institute claims arising out of Caterpillar's acquisition of Seaway, which was a Chinese company from which shortly after Caterpillar completed the acquisition, it announced an over $500 million charge constituting more than 85% of the purchase price. And the gravamen of the claim is that the officers charged with making certain that and thereby breached their fiduciary duties to the company. So let me just say... Actually, I think Judge Rovner has a question, so I will defer. Judge Rovner. Thank you. In terms of the delay in responding to the plaintiff's demand, wasn't it possible that the outcome of the demand futility action would shed at least some light on whether a demand was necessary in the suit? I mean, I know that this suit named different defendants, but all of the suits arose out of the same underlying facts, didn't they? They all did. That is correct, Your Honor. But let me address that because Delaware law still requires a prompt response to the demand. And if here we waited till the resolution of the shareholder demand futility action, I think you can see in the record that the final dismissal came in September 2016. There's some discussion here, and it's another reason why the board had to take up the demand earlier, because it was a potential issue of the expiration of the statute of limitations. And plaintiffs, in fact, raised this with counsel for the company, were also counsel for the defendants. And we sought to avoid filing the complaint if there was, A, either a tolling agreement entered into or some demonstration on the part of the company that there was no problem with the statute of limitations. And we never received those two things, so we had to file the complaint. But getting back to the issue of let's wait for the outcome of the demand futility action, it's resolved in the end of September 2016. You couldn't possibly, I think, under even the most liberal interpretation, assuming arguendo that Illinois statute of limitations applies and Delaware internal affairs doctrine doesn't apply here, you couldn't possibly complete an investigation. Because sometime in 2016, maybe the later part of 2016, the statute of limitation defendant, a clever defendant, and even not so clever defendant could argue that the limitations period expired. And by doing so, you're exposing the company to the claims being stale. Now, it happens to be that in this very circumstance, and it's in one of the letters attached to the complaint when we write to the company, and they complain about dependency of the demand futility action as constituting a problem with proceeding with an investigation into the claims. That Bilotti and Finkelstein, which is a fairly well-known treatise on Delaware law, suggests a procedure for dealing with this sort of situation, and that it shouldn't be a problem of looking into the issues raised in the demand, especially when the company is contending that the demand futility action was improperly brought, and demand is in fact not futile. So in this circumstance, maybe there's another circumstance, but in this circumstance, the failure to timely act in response to the demand, especially when there's a serious risk that the limitations period would expire, and the company and the defendants refuse to enter into a tolling agreement, raises a reasonable doubt, which is the standard under Delaware law, that the board wasn't acting in good faith in looking into these claims. There happens to be a decision we cite in our brief, I think it's Rich, Xrel Fuki Corporation versus Chung, which says that that alone constitutes a basis for concluding that demand was wrongfully refused. But that really seems to be quite a jump, because the board is doing a lot of things as the facts come out about this transaction. But Delaware law is very kind in its understanding of the business judgment rule. And so we start from the proposition that the Seaway transaction was not the profitable transaction they thought it was going to be. It leads to this half a billion dollar hit on the books. But they start taking actions immediately, and they're right in the middle of things. They do have the demand futility actions pending. And if the demand futility actions had gone forward, this case would have looked quite different. I think the board could responsibly think that it needs that data. And maybe you can clarify something for me, because the board tells you, or somehow the word gets to you, that they think that the Illinois statute, the five year statute applies, and there's plenty of time, there's 38 months, and so on. When is that first, and how is that first communicated? Your Honor, I can tell you when that's first surfaced to us in their brief. It was not surfaced to us beforehand. I believe, I mean, I recall the conversations fairly distinctly. I mean in the district court, because the district court says under Erie, et cetera, et cetera, the informed statute of limitations. I, with all due respect to district court, I don't know if that's, it's an unsettled issue of law based upon internal affairs doctrine. And I believe the working assumption was when I spoke to counsel for defendants, was that Delaware statute of limitations, which was three years, would apply. And their response was, is the identity of actions between the demand futility action and the demand made by the shareholders would effectively total the statute of limitations. And my response to that was, great, I'd like to know. Put it in writing, yeah, great. Well, I'll tell you, because I one time raised that very argument in a case I had in New York, and it was dismissal in the case. So I'm extremely uncertain if that's in fact the case when you look at a demand futility action compared to a demand refused action. But I do know that under this circumstances, without getting tolling agreement, waiting for the demand futility action to be resolved would mean that the limitations period expired. I would also add that the district court actually found that dependency of the demand futility action was not a valid basis for looking into the demand. And defendants moved to stay. The district court denied. And after that, and before the dismissal of the demand futility action, the board actually went out and hired Jones Day to look into the allocations of the demand futility action. Right. Well, and Jones Day's investigation certainly has a lot of bearing on your action as well. It does, but it's an argument in the alternative. If they didn't act in a timely fashion, if the board didn't act in a timely fashion to investigate the claims and didn't preserve the statute of limitations in any other fashion, then they've wrongfully refused demand. I mean, obviously, we have other arguments, or at least three other arguments in this case, why we feel demand was wrongfully refused. One of which is that we produced a report, and there's a lot of supporting information, including three appendices that are completely redacted. And there are constant references to an E&Y due diligence report and other matters. And we learned for the first time that Sidley and Austin actually did look into this matter, even if they didn't investigate the actual claims. They looked into the actual facts of the matter. It's seemingly prior to the time we made a demand. And this information is redacted. And the decision by, I don't know if she's still chief judge, Hamilton in the Northern District of California in the city of Orlando versus Page case is on point in that regard. When you produce a report refusing demand, you should produce the entire report and not just make it a guessing game as to everything that the council or the board relied upon. Well, did you, I mean, their position is that these redacted materials are protected by various privileges, attorney client or work product or something. I believe in our brief, we cite the Grimes case. And I have some familiarity with Delaware practice. When you produce a special litigation committee report or any report of this nature, it's not privileged. I mean, you're saying these are the reasons why demand was rejected. It would essentially involve using the privilege as both a sword and a shield. You would say, well, here's the stuff we want to show you. But the other stuff, that's privileged. We don't want to show it to you. And it raises a reasonable doubt. I remember at this stage of the proceeding, we're not required to prove to affirmatively rebut that the board didn't follow its business judgment or comply with the business judgment rule. We're required to raise a reasonable doubt. And they didn't, they did not do that. So that's another issue. And we also raised, we raised, I could go through all the issues. No, I mean, we've certainly read your briefs. And I think there's going to be some difference of opinion between your reasonable doubt standard and that of your opponents. But let me ask you this somewhat related question. You didn't ever try a section 220 proceeding, did you? Not in this case. I have in other cases, Your Honor. And I really couldn't in this case, because if I went to Delaware and I said I wanted documents in the 220, which is a separate plenary proceeding, which by the way, does not move like lightning. It moves fast, but it could take several months. It could take a few months for briefing. You get judgment. There could be witnesses called for testimony, including plaintiffs. You only get the documents necessary. And by filing a complaint, which I have on file here, which I had to file, I had affirmative rule 11 obligation to state that I had the necessary information to plead wrongful demand refusal. And I cannot then go to Delaware court and say, these documents are necessary for me to plead wrongful demand refusal. It's an oddity of Delaware law. But I thought that the Delaware courts had said that there were circumstances in which, well, of course, you wound up with the complaint. There's a circumstance in the Verifone case where the case is dismissed, and the judge says, go to Delaware and get the documents. But that's about it in Delaware, in my experience. I mean, I can't reference a case which isn't cited in the brief, but there was one time a case where we filed a motion to intervene in another shareholder's derivative action, and the defendants try to hold that over our heads while we were proceeding with something similar to a 220 action in Delaware involving Delaware statutory trust. And it was a tight argument. I mean, Vice Chancellor Laster found in our favor that it wasn't actually the filing of the complaint, we were forced to do it. But my experience in Delaware tells me we would not be able to file a 220 complaint unless the judge here said, go and go to Delaware and get the documents. So are you hoping that maybe these redacted appendices, you know, have these high level people at Caterpillar saying, oh, we don't care what happens. Let's just go in and waste the corporation's money. You know, I can't think what they would have said. I don't think it's going to ever be anything. They're not that venal as people, and they're not that horrible. But it could be a situation. It's highly likely that there was intense pressure to do the deal, and they didn't do all the due diligence they were supposed to do, and they were told to do this due diligence. There are a lot of factors in this case. Well, E&Y had some additional suggestions, but they didn't say, and if you don't do this, you will fail due diligence. We don't know precisely what E&Y told them, because even though the E&Y due diligence report is referenced throughout the Jones Day report, we don't have the E&Y due diligence report. But it's hard to believe that given how quickly Caterpillar discovered this financial fraud after it finished the acquisition, that this is the sort of information that couldn't have been discovered during due diligence. I can be accused of a reciprocal type of analysis, but there's been no criminal accusations. Defendant Oberhelman in a public statement said, essentially, I'm not quoting it, I'm paraphrasing it, the buck stops here was my fault. I mean, there was something that happened here. Due diligence was... But mistakes aren't the same thing as a breach of the business judgment rule. Mistakes happen, and corporations are not always liable. That's true, but there are a lot of issues here in terms of what's been disclosed in the report. And there's also the issue that gross negligence arises when you don't take action to inform yourself of all necessary issues. And there's an open question here, and we explored it in our brief, that it seems to us that the Jones Day report tried to work its way around this issue, about what was exactly told to do, what were the open issues E and Y had, why they were supposed to address them, why they weren't addressed, how this slipped through the cracks, how there was a more than a half billion dollar loss, why Defendant Oberhelman said that the buck stops here, why all these experts in corporate governance, we cite in the report, say they messed up big time here. When you're doing an acquisition of that size, it's not like a citation error in a brief. No, no, I understand. It's something qualitatively different, and a company the size of Caterpillar, with the professionalism, it should not have happened. They hired an outside expert to oversee due diligence, and it's seeming, I think we have raised reasonable doubt that the due diligence wasn't properly performed. Otherwise, it wouldn't have happened. I reserve my time, Your Honor. A little bit is left. Okay, fine. Mr. Dukiat. Good morning, and may it please the Court. This is a case, Your Honors, where the Board of Directors of Caterpillar made a judgment under their business judgment that bringing the lawsuit that the plaintiffs have suggested here was not in the interest of the company or its shareholders. So just to be clear, I have been wondering why the Caterpillar Board delayed a response to the plaintiff's demand in this suit, because I would have thought it would help Caterpillar's decision  to immediately commence an investigation, and thereby show that Caterpillar takes demand seriously. Well, Your Honor, that would not be a defense in the demand futility action. And the Board, again, within the bounds of its business judgment, concluded it would not be a good use of the company's resources to conduct an investigation while the issue of demand futility was going on. And that was an issue that was being actively litigated. And as Your Honor indicated, that would have significant bearing, potentially, on what the investigation would look like and how the demand here would be treated. And just to be clear here, Your Honor, there is no rule in Delaware that says the Board has to immediately respond to a demand. The way in which the Board responds to the demand is itself committed to the business judgment of the Board. And that's exactly what happened here. They looked at the overall posture of the litigation, and they concluded that it would be better to temporarily defer the investigation until there was resolution of the demand futility. Right. And so just to be clear, I was going to say, I mean, there's sort of two layers, or at least two, maybe more, layers of business judgment that are involved in this case. But the one that we're primarily focusing on was the Board's chosen path when the plaintiffs come along and make their demand. Yes. To not to invest. Now, I'm sure it costs some money to conduct these investigations, to go out and hire Jones Day, to assemble all the rest of it. But placed against the stakes of this transaction, is that something we can think about at all? Well, Your Honor, again, it's not as if the Board's doing nothing here. The Board is very actively monitoring the existing litigation. And the Board, by the way, just to step back for a second, had been very involved in the transaction and had been very involved in the aftermath of the discovery of the fraud. And so it's simply not the case that they're waiting to see how all of this turns out. They are actively engaged. They're taking appropriate remedial steps in the wake of the fraud. And that's a separate question from how to respond to the litigation demand that Mr. Abraham's clients brought to the Board. What is the damage claim? I look at something like this, where it's pretty broad. What's the ultimate hope and the outcome? I mean, is there some kind of money? Your Honor, this is a case that would be a derivative case. And so it would essentially be a case brought by the corporation against the individuals. A decline in the stock value. Based upon injury to the corporation in the form of a financial injury or the like. And yes, I think the ultimate resolution from the plaintiff's perspective would be some benefit back to the company. Some payment of money. From whom? From the individuals. The idea would be you'd sue the individuals. And by the way, Your Honor, that presents all kinds of interesting issues. Because of course, these individuals are indemnified as a matter of Delaware law. We have to advance and pay for their legal expenses. And so there's a kind of circularity to these kinds of cases which this board took into account. Yeah, the record shows the board said that if you got some significant recovery from Mr. Oberhelman or anybody else, he would, under Delaware law and under the contractual arrangements he has with the company, be indemnified by Caterpillar. Which seems a little self-serving. But anyway, that's the way that works. Yeah, there's certain exceptions to that, Your Honor. But the point is that the board took that into account. And I want to just emphasize something that Your Honor touched on. And that is there really are two different business judgment issues in this case. There really is, in this case, only the question presented about whether this board acted appropriately in response to the demand. So we're not worrying about whether they were smart to do the Seaway transaction. They still own that company, right? Yes, Your Honor, they do. Yeah. Yes. That's exactly right. And so the point is the standard here to be applied is whether or not in responding to the demand, they're subject to the protections of the business judgment rule. Making a demand is a concession. That the board has a majority of disinterested and independent directors who can consider this demand. And so the issues here are very narrow. It's only whether or not the board was grossly negligent, which is a kind of, you know, doing no investigation whatsoever or a kind of reckless total disregard beyond the bounds of reason or bad faith. So, and the ways in which it may have been would have been not responding to the demand in a timely manner, not agreeing to toll the statute of limitations if the board really thought it needed more time than preserve. And actually, I think that's a little odd because when you finally get to this point or the district court point really more accurately, where you're out there trumpeting that it's the Illinois law, I would think you'd be facing some serious judicial estoppel if you then tried to turn around and say, oh, actually, we're just kidding. It's Delaware law. So, I mean, it seems to me, there aren't so many ways you can play that one. Well, Your Honor, just to be clear, I think the view was it was Illinois law. It was a five-year statute of limitations. And that statute of limitations ran from the time that the company discovered the fraud in November of 2012. That gave you five years from that date. The demand here was served in June of 2014. There were three and a half years left on the statute of limitations. But why wouldn't you just say so? Why couldn't you say, Caterpillar, why wasn't the board required at least as part of a reasonable response to the demand to say, we concede that's the, because there is some legal issue about whether this is so intimately tied up with the cause of action, the internal affairs doctrines, whether this happens to be an exception to the normal Erie Claxon regime. Well, Your Honor, we certainly explained to the plaintiffs here why it was the board was going to defer resolving the demand. And again, it's a matter that's sort of committed to the business judgment of the board in terms of the ultimate rationale that it chooses to follow. Do these four people that are sued individually, I guess, is there any confinement to that? I mean, we talk about a derivative thing and it comes back and it comes full circle back to the corporation if there's an indemnification for board members or whatever it is. I guess I look from a practical standpoint, is this, where does this go, other than costing a lot of money litigating? Well, Your Honor, there is a very narrow exception. The company cannot indemnify if in fact there was some truly fraudulent or bad behavior here. And so there's a kind of narrow sliver of conduct in which you don't have this kind of circular indemnification problem. Then there's usually some other exterior beneficiary, somebody else got some money somewhere. That's right. None of which has been suggested here. The question would simply be, did they breach their fiduciary duties in exercising their management responsibilities to do due diligence? So that's the underlying. That's the underlying issue, graduates. That's exactly right. And so again, these are all issues that Jones Day looked at. You have a very detailed, single space, 46 page report that lays out in exhaustive detail all of these factors, all of the things that Jones Day looked at and all the things that the board considered when it made its ultimate determination. This just isn't in the interest of the company to pursue. But Mr. Abraham argues that Jones Day itself was conflicted because of the Ernst & Young Association. If you look at the report, there is this little tiny section over here on page 42, essay 46, that carries over to page 43 about potential claims against third parties. Yes, ma'am. And it just kind of whooshes by that. Well, no. It'd be barred by the terms. Your Honor, you heard Mr. Abraham say at the outset, the gravamen in this case are the claims against the individual officers. And that's exactly right. That's who was identified in the demand. That's who they've named in this lawsuit as potential defendants. We don't believe that there is a adequate allegation that there's any kind of conflict between Jones Day and Ernst & Young. It is not alleged with any kind of particularity. But the question, again, to get back to Your Honor's point, the question is the good faith and whether or not the board acted with gross negligence with respect to that issue. So what about this reasonable doubt standard that Mr. Abraham is relying on? Has he pleaded enough to create a reasonable doubt that the board, in its response to the demand, was not within the boundaries of the business judgment rule? Well, Your Honor, the question is reasonable doubt as to what? What is the standard here? And that's very important because the business judgment rule says you can't overcome and second guess the decision unless you have gross negligence or you have bad faith. And so the question is reasonable doubt that the board acted with gross negligence, a kind of intentional, almost dereliction of duty. The allegations in this complaint do not yield such an inference. The allegations, again, are consistent with the company having discovered the problem, the company having engaged in efforts to deal with the problem. And when the demands were made, retaining a very well-respected law firm to conduct a thorough investigation, to consider all of the issues and ultimately to come to a conclusion. And by the way, just to touch briefly on the document issue, we gave a copy of the report to the plaintiffs. Yeah, but it's blacked out. Well, Your Honor, as you'll see in the supplemental appendix, there are a couple of pages that are redacted because we're seeking to protect the privilege here. That privilege was never properly challenged below. But you're right, because Mr. Abraham said there isn't a privilege in this circumstance. Again, it wasn't properly presented to the district court for resolution of that question. But the point here is it's a very detailed and comprehensive report which sets forth what was done. It's true that there are a couple of pages that summarize the confidential and privileged information. But that doesn't detract from the overall scope of the work that was done here. And that, again, is the question. The question is, was the board grossly negligent in relying upon the Jones Day work in light of everything that Jones Day did, everything that Jones Day looked at, and all of the ultimate recommendations that they made? So would it be accurate maybe to rephrase this slightly and ask whether the board was grossly negligent in coming to the conclusion that it didn't want to pursue, it didn't want the corporation to pursue litigation against the individuals? Well, Your Honor, again. The allegedly, you know, disloyal or I don't know what. The people who got them in trouble. Yeah, so the Jones Day report reflects an assessment of the substantive merits of the claims and the, you know, demerits of the claims, as well as other factors, business considerations. It is up to the board in the normal instance to decide whether or not to commit the company's resources to pursuing litigation. And that encompasses all kinds of different considerations, business considerations, pros and cons, expenses, you know, collateral implications and the like. All of that is laid out in great detail in the Jones Day report as part of the overall set of facts that the court, excuse me, that the board took into consideration here. And the question then is, have they alleged facts to establish bad faith with respect to that decision or gross negligence? I don't think that's a, you know, a showing that can be made on the allegations here in light of what is in front of this court, what was in front of Judge Darrow below. Ultimately, who was it that fell on the sword? Say it's Teague's full credit, it's his fault, et cetera. The chief executive officer. And then, and so he recognized he made a big mistake and admits it and says that will happen. This is, it's all, in hindsight, it's pretty, pretty sad, you know, that a lot of people goofed up. But I guess as Judge Wood brought up, they still own the company, whatever, that's worth it. They do, and Judge, you know, Your Honor, Mr. Oberhelman said the buck stops here. Mistakes. Didn't Mr. DeLeon lose his job? I can't remember. He did lose his job, that's correct. And, but the point is that mistakes are not breaches of fiduciary duty. And that's not even the question. The question is, did the board act in good faith on an informed basis in deciding it's not worth at the end of the day bringing these claims against these particular defendants. That is something that is protected by the business judgment rule. The allegations in the complaint do not set forth the kind of extreme facts that you need. My friend, you know, referenced the Rich decision in Delaware. That's a very extreme case if you look at the facts of that case. That's nothing like what happened here. And so it's extremely rare that in a circumstance where you have a, you know, a board retaining counsel, doing an investigation, articulating the reasons for its decision, that you nevertheless have a shareholder who can displace that judgment and step into the shoes of the company. And so for that reason, Your Honor, we would ask that the court affirm the district court's dismissal. All right, thank you. Mr. Abram, you were perilously short on time, but I will give you a full minute to rebut. Sure. Your Honor, let me say that first of all, discovery was stayed in this action. There wasn't an opportunity to challenge attorney-client privilege. We've raised it in our papers. On the issue of recovering from individuals, it comes up in a lot of litigations. There actually is directors and officers liability insurance, which companies like Caterpillar carry, which is usually rather substantial in my experience, could be north of $100 million. And I would just refer the court to exhibit G to the complaint. So the point of the, you're just saying with the insurance, it wouldn't be coming out of Caterpillar's own coffers. Right, they carry insurance for this type of circumstance. I mean, that's like when somebody... Those are very common policies, I know. Yes, but Your Honor, if you reference exhibit G to our complaint, there's a letter I wrote to Mr. Duque, which actually references an article he wrote in a BNA that says a company board must consider a demand as soon as it is made. I suppose one can decide not to consider it, but that was what he wrote in the BNA article. And we also, in that exhibit, referenced the Bellotti and Finkelstein treatise as to how to deal with this type of situation. And I also want to point out, I know I have no time left, is that particularity does not require the pleading of evidence. And that's asking a bit too much from plaintiffs, especially where we've had no discovery in this case, Your Honor. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.